FILED
COURT OF APPEALS
DIVISION II

2015 JUN -4 AM 8: 34

STATE OF WASHINGTON
BY____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43762-7-II |
| | consolidated with |
| Respondent, | No. 45418-1-II |
| v. | |
| LA'JUANTA LE'VEAR CONNER, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — La'Juanta Le'Vear Conner appeals his 24 convictions based on, or related to, a series of home invasion robberies and burglaries.[1]  Conner argues (1) the trial court abused its discretion when it allowed the State to exercise a peremptory challenge after the trial started, (2) the trial court erred by allowing improper opinion testimony, (3) his attorney's failure to object to improper opinion testimony provided him ineffective assistance of counsel, (4) the trial court erred when it provided a missing witness instruction to the jury, (5) the trial court improperly commented on the evidence, and (6) the trial court erroneously imposed a fourteenth firearm enhancement related to a charge of which Conner was acquitted.  In his statement of additional grounds (SAG), Conner asserts insufficient evidence exists to support his convictions of unlawful possession of a firearm and possession of a stolen firearm.  He further asserts prosecutorial misconduct.

Conner filed a personal restraint petition (PRP) that is consolidated with this direct appeal. In his PRP, Conner argues (a) the State's second amended information is invalid because the State

---

[1] Conner was convicted of one count of conspiracy to commit burglary in the first degree, two counts of unlawful possession of a firearm in the second degree, two counts of possession of a stolen firearm, eight counts of robbery in the first degree, five counts of burglary in the first degree, four counts of theft in the second degree, one count of theft in the third degree, and one count of theft of a firearm.

did not file an amended statement of probable cause, (b) the jury instructions relieved the State of its burden to prove all elements of the crimes beyond a reasonable doubt, (c) the State vindictively prosecuted him, (d) the trial court erred when it sentenced him by imposing an exceptional sentencing without findings, by failing to conduct a same criminal conduct analysis, and by violating his double jeopardy rights.

We hold that the trial court erred when it allowed the State to exercise a peremptory challenge after the jury was sworn, but that the error did not prejudice Conner. We also hold that the trial court erred by instructing the jury using a missing witness instruction, but that the error was harmless. We vacate Conner's theft in the third degree conviction because it violates the prohibition against double jeopardy. We affirm Conner's remaining convictions. Additionally, we hold that the trial court erroneously sentenced Conner on one firearm enhancement related to a charge of which he was acquitted. We remand for resentencing on the remaining convictions and twelve firearm enhancements.

## FACTS

### I. HOME INVASIONS AND ARREST

The State, by second amended information, charged Conner with 26 separate offenses based on a series of home invasion robberies and burglaries in Kitsap County, 14 of which included firearm enhancements.

#### A. Twelfth Street (I)

On September 15, 2010, Robert and Aaron Dato were present at their apartment on Twelfth Street in Bremerton that they shared with Thomas Harveson, who was not home at the time. Conner, Kevion Alexander, Anthony Adams, and Troy Brown entered the apartment wearing bandanas, carrying guns, and making demands for property. They took the Datos' personal

property from their persons or in their presence, and they took property that belonged to Harveson. Conner carried a Hi-Point .40 pistol during the commission of this crime. Based on this incident, the State charged Conner with two counts of robbery in the first degree, one count of burglary in the first degree, and one count of theft in the second degree. The State alleged three firearm enhancements.

B.      Twelfth Street (II)

On September 28, 2010, the Datos and a friend, Jeffrey Turner, were at the Twelfth Street apartment in Bremerton. Harveson was not at home. Conner, Alexander, and Adams entered the apartment wearing bandanas, carrying guns, and making demands for money. They took personal property from the Datos. They also took personal property belonging to Harveson. Based on this incident, the State charged Conner with three counts of robbery in the first degree, one count of burglary in the first degree, and one count of theft in the second degree. The State alleged four firearm enhancements.

C.      Shore Drive

On September 28, 2010, Brett Cummings was in his studio apartment on Shore Drive in Bremerton. Conner stood outside while Alexander and Adams entered Cummings's apartment carrying guns and making demands for property. Either Alexander or Adams pushed Cummings to the ground and Conner and Adams hit him over the head with the butt of their guns. They took Cummings's personal property. Conner carried a Hi-Point .40 pistol during the commission of this home invasion. Based on this incident, the State charged Conner with one count of robbery in the first degree, one count of burglary in the first degree, and one count of theft in the third degree. The State alleged two firearm enhancements.

3

D.      Weatherstone Apartments

On the night of October 2, 2010, Conner, Alexander, Adams, and Jerrell Smith entered Kimberly Birkett's apartment at the Weatherstone Apartments. They took Birkett's personal property. Conner carried a Hi-Point .40 pistol. Based on this incident, the State charged Conner with one count of burglary in the first degree and one count of theft in the second degree. The State alleged one firearm enhancement.

E.      Wedgewood Lane

On the night of November 3, 2010, Aaron Tucheck, Ann Tucheck, and Keefe Jackson, were at their residence on Wedgewood Lane. Conner, Alexander, and Brown entered the residence carrying guns, making demands for property, and ordering Aaron to open a safe. They took personal property, including a firearm and a debit card, belonging to the Tuchecks and Jackson. Conner carried a Hi-Point .40 pistol during the commission of these crimes. A co-defendant carried a Taurus .44 revolver during the commission of the Wedgewood Lane home invasion. Based on this incident, the State charged Conner with two counts of robbery in the first degree, one count of burglary in the first degree, one count of theft of a firearm, and one count of theft of an access device in the second degree. The State alleged three firearm enhancements.

F.      Arrest

On November 17, 2010, the police arrested Conner during a high-risk traffic stop. Conner was a passenger in the truck occupied by two of his co-defendants. Prior to the stop, Conner sat in the passenger seat when the driver of the vehicle said, "[W]e got two gats locked and loaded ready to go." VI Report of Proceedings (RP) at 869. Law enforcement executed a search warrant on the truck and found a bag in the bed of the truck containing two loaded firearms, a Hi-Point .40 pistol with a filed off serial number and a Taurus .44 revolver. Law enforcement also located a

4

baggies of marijuana in the cab of the truck where a co-defendant had been sitting. Based on this incident, the State charged Conner with one count of conspiracy to commit burglary in the first degree, two counts of unlawful possession of a firearm in the second degree, two counts of unlawful possession of a stolen firearm, and one count of possession of marijuana. The State alleged one firearm enhancement.

Law enforcement subsequently searched the apartment of Conner's romantic partner, Rachel Duckworth, and found stolen property from the crimes described above. Based on this search and seizure, the State charged Conner with one count of possession of stolen property in the third degree.

II.    TRIAL

A.    Peremptory Challenge

After the parties selected a jury but before the court swore them in, juror 4 stated that she remembered that the judge had presided over the trial where her son was convicted of attempted murder. The State asked the trial court, but not the juror, whether the juror testified at her son's trial. The trial court replied in the negative. Following additional questioning, the trial court found that juror 4 showed no bias or prejudice. The State neither challenged the juror for cause nor exercised its remaining peremptory challenge. The judge swore in juror 4 with the rest of the panel.

The State began its case in chief and presented witnesses. Two days later, the State informed the trial court it learned juror 4 had testified in her son's trial and that the prosecutor had accused her of lying and manipulating testimony. The State also asserted that the juror indicated she had talked to a family member about Conner's trial, which caused her to remember that the judge presided over her son's trial. The State moved to excuse the juror, but the trial court ruled

5

that the juror had not clearly violated the trial court's orders and that it "[could not] excuse her for cause based upon answers to questions that she provided earlier because we had already addressed that issue before impaneling her." VI RP at 651. The trial court took the State's motion under advisement.

The next day, the State asked to exercise its remaining peremptory challenge to excuse juror 4. Conner objected. The State argued that it relied on the trial court's faulty recollection that the juror had not been a witness in her son's trial and it would have struck her if the State had been aware she testified. Relying on *State v. Williamson*, 100 Wn. App. 248, 996 P.2d 1097 (2000), the trial court allowed the State to exercise its remaining peremptory challenge and it excused juror 4. Following this juror's excusal, 12 jurors and one alternate remained.

B.     Opinion Testimony

Detective Mike Davis testified about his post-arrest questioning of Conner. During cross-examination, Conner elicited from Detective Davis that he used a "ruse" when questioning Conner. V RP at 605. On redirect, Detective Davis explained he employs a ruse when questioning suspects "[t]o elicit the truth" and when he "believe[s] that [the facts say] otherwise what the person is telling me." VI RP at 730. Detective Davis said he uses a ruse "to get the facts. That is what I am is a fact-finder." VI RP at 730. Conner did not object to this testimony.

C.     Missing Witness Instruction

The State presented evidence that Duckworth exhibited hostility towards Detective Davis. The State also played recordings of jail calls between Conner and Duckworth in which Conner made many comments including that he was "done with all that [explicative]" and "changing [his] ways." Supp. Clerk's Papers (CP) at 355, 360. Conner testified that the recordings meant he would be leaving the streets behind and quit selling drugs.

The State requested a missing witness instruction. It argued that Duckworth, identified as a defense witness, exhibited hostility to law enforcement, could have supported Conner's version of the jail calls, and could have testified regarding the stolen property found in her apartment. Conner argued that the State could have called Duckworth.

The trial court found that Duckworth's testimony would have been material and not cumulative, Duckworth's absence was not adequately explained, Duckworth was particularly within Conner's control; Conner did not adequately explain Duckworth's absence, and Duckworth's testimony would neither have infringed on Conner's constitutional rights to remain silent nor shifted the burden to Conner to prove his innocence. Thus, the trial court instructed the jury using a missing witness instruction and permitted the State to argue Duckworth's absence in its closing argument.

D.    Closing Argument

During closing argument, Conner argued that the police and prosecutor's office coached witnesses regarding their testimony. The State objected:

> [DEFENSE COUNSEL:] Mr. Smith is no fool. Like any kid, he's just been told what direction to take with his lies. Mook Alexander went through the same thing, whether he got it from the prosecutor's office, when they interviewed him from the detectives, from his own lawyer—
> [PROSECUTOR]: Objection, Your Honor. These are facts not in evidence.
> THE COURT: Sustained. Move on, [Defense Counsel].
> [DEFENSE COUNSEL]: Mr. Alexander knew which way that he needed to go. At the time that he came forth in March, and they needed to cut his sentence way down, he knew, and in trial the only person that they had to get was Mr. Conner.
> [PROSECUTOR]: Objection, Your Honor. Move to strike.
> THE COURT: Members of the jury, you will disregard the last argument of Counsel.
> [DEFENSE COUNSEL]: Mr. Conner was the person left that they did not have the evidence that they needed, and Mook Alexander—
> [PROSECUTOR]: Objection, Your Honor. Move to strike.
> THE COURT: Sustained. Move on, [Defense Counsel].

XVII RP at 2590-91. Conner later argued that Smith and Alexander changed their stories because they are experienced liars. The State objected:

> [DEFENSE COUNSEL:] Once they start lying, they don't stop lying. . . . So they are very quick, and they move very quick. So it's almost like shadow boxing because they know how to do it because they are experienced in it. They have been doing it a long time.
> [PROSECUTOR]: Objection, Your Honor.
> THE COURT: Sustained. Move on.
> [DEFENSE COUNSEL]: I submit that the evidence shows that when you look in your record in terms of what Mr. Mook Alexander's record is, that he talks about on the stand—
> [PROSECUTOR]: Objection, Your Honor. Facts not in evidence.

XVIII RP at 2613-2614.

Outside of the jury's presence, the State argued that the record contained nothing to suggest Alexander has been a liar for a long time. Conner argued that Alexander's prior crimes of dishonesty meant that he was an experienced liar. The trial court sustained the objection because the statement "'they have been lying for a long time' is improper argument based upon the facts that are in evidence." XVIII RP at 2616. The trial court noted that Smith had no prior convictions and that "one can be a theft [sic], which is dishonest, and one can be a liar." XVIII RP at 2615-16. The trial court sustained the objection and instructed the jury to disregard Conner's counsel's last remarks.

E.     Verdict and Sentencing

The jury found Conner guilty on all counts except possession of marijuana and possession of stolen property in the third degree. Additionally, the jury specially found that Conner was armed with a firearm on all but one count alleged. The trial court imposed a standard range sentence of 1148.5 months. Conner appeals. He also filed a PRP that is consolidated with this direct appeal.

## ANALYSIS

### I.   PEREMPTORY CHALLENGE

Conner argues that the trial court erred by allowing the State to exercise a peremptory challenge after the jury had been sworn and witnesses had testified. He argues that the trial court did not follow proper procedures. We hold that the trial court abused its discretion by allowing to State to exercise its remaining peremptory challenge on juror 4, but no prejudice resulted.

We review a trial court's decision to excuse a juror for abuse of discretion. *State v. Elmore*, 155 Wn.2d 758, 768, 781, 123 P.3d 72 (2005); *State v. Ashcraft*, 71 Wn. App. 444, 461, 859 P.2d 60 (1993). "A discretionary determination will not be disturbed on appeal without a clear showing of abuse of discretion, that is, discretion that is manifestly unreasonable or exercised on untenable grounds, or for untenable reasons." *State v. Smith*, 90 Wn. App. 856, 859-60, 954 P.2d 362 (1998). A trial court abuses its discretion if its decision is based on a misunderstanding of the underlying law. *State v. Burke*, 163 Wn.2d 204, 210, 181 P.3d 1 (2008).

CrR 6.4(e) sets forth the procedures for exercising peremptory challenges in criminal trials. "After prospective jurors have been passed for cause, peremptory challenges shall be exercised alternately." CrR 6.4(e)(2). Once a party accepts the jury as presently constituted, that party may only peremptorily challenge jurors later added to that group. CrR 6.4(e)(2). Here, the parties had already accepted the jury; therefore, the State could not use a peremptory challenge on juror 4. Because the trial court misapplied the court rule, it abused its discretion.[2]

---

[2] The trial court relied on *Williamson*, 100 Wn. App. at 253. In that case, unforeseen circumstances existed to justify the court's action because a juror did not disclose that she knew the victim until after the trial court swore in the jury and the State's first witness began to testify. *Williamson*, 100 Wn. App. at 252. We do not have unforeseen circumstances in this case because juror 4 informed the trial court that the judge presided over her son's trial before the sworn jury started hearing the case.

However, the trial court's error caused no prejudice. The Sixth Amendment of the United States Constitution and article 1, section 22 of the Washington Constitution guarantee a defendant the right to a fair trial by an impartial jury. *State v. Latham*, 100 Wn.2d 59, 62–63, 667 P.2d 56 (1983). But the "[d]efendant has no right to be tried by a particular juror or by a particular jury." *State v. Gentry*, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995). The constitutional requirement of a randomly selected jury is "satisfied by the initial random selection of jurors and alternate jurors from the jury pool." *State v. Coe*, 109 Wn.2d 832, 842, 750 P.2d 208 (1988).

If a juror becomes unable to perform his or her duty after formation of the jury, the trial court may discharge the juror. CrR 6.1(c). In such instance, an alternate juror may replace the discharged juror. CrR 6.5. Here, following juror 4's excusal, 12 jurors plus an alternate remained. The State and Conner selected all of the jurors and alternate jurors. Conner makes no showing and does not argue that a biased jury heard his case. Therefore, no violation of Conner's right to an impartial jury occurred and he has demonstrated no prejudice that resulted from the excusal of juror 4. The error was harmless.

II.    OPINION TESTIMONY

Conner argues that the trial court erred by admitting Detective Davis's testimony regarding his use of a ruse. He argues that this testimony prejudiced him by allowing opinion testimony on an ultimate issue for the jury and therefore his guilt. Conner initially elicited the testimony on use of a ruse. Additionally, Conner did not object, move to strike, or ask that the jury be instructed to disregard Detective Davis's testimony on redirect. Therefore, Conner failed to preserve any challenge to this testimony and we decline to review it. RAP 2.5(a).

III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Conner contends that he received ineffective assistance of counsel because his attorney did not object to Detective Davis's testimony regarding his use of a ruse. He argues that this failure to object resulted in prejudice because "there was nothing preventing the jury from considering that opinion [that Conner was untruthful] when evaluating Conner's credibility." Appellant's Br. at 40. We disagree and hold that Conner did not receive ineffective assistance of counsel.

A.   Standard of Review

Ineffective assistance of counsel is a mixed question of law and fact we review de novo. *Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland*, 466 U.S. at 687. Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance prejudices a defendant if there is a "reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To rebut this presumption, a defendant bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33.

B.   No Ineffective Assistance of Counsel

Even assuming, without deciding, that Detective Davis's opinion testimony went to an ultimate issue for the jury, Conner has not established the absence of any legitimate trial tactic to explain his counsel's performance. Conner's lawyer first raised Detective Davis's use of a ruse on cross-examination. He asked Detective Davis if he lied to Conner when he told him that Smith and Perez accused Conner of handling the Hi-Point .40 pistol. Detective Davis responded that he used a ruse. Conner's counsel followed up by asking, "That is something that you do in police work . . . you make people think that you have something when you don't have something?" V RP at 608. Detective Davis answered, "That is correct." V RP at 608. On redirect, the State asked Detective Davis to define ruse, and Conner's counsel did not object. Conner fails to show that no conceivable legitimate trial tactic explains his counsel's performance. *See Grier*, 171 Wn.2d at 33. In fact, this line of questioning was consistent with Conner's overall defense strategy of denying his involvement in the crimes while implying that Conner became a target of the police. Conner cannot demonstrate deficient performance; therefore, we need not address the second prong. *See Grier*, 171 Wn.2d at 33.

IV.   MISSING WITNESS INSTRUCTION

Conner argues that his convictions should be reversed because the trial court misapplied the missing witness doctrine and improperly instructed the jury. He also argues that the trial court improperly permitted the prosecutor to argue this doctrine. We hold that that the trial court misapplied the missing witness doctrine, but the error was harmless.

A.   Standard of Review

"[W]hether legal error in jury instructions could have misled the jury is a question of law, which we review de novo." *State v. Montgomery*, 163 Wn.2d 577, 597, 183 P.3d 267 (2008). We

12

review a trial court's rulings on improper prosecutorial argument for abuse of discretion. *Montgomery*, 163 Wn.2d at 597. "A discretionary determination will not be disturbed on appeal without a clear showing of abuse of discretion, that is, discretion that is manifestly unreasonable or exercised on untenable grounds, or for untenable reasons." *Smith*, 90 Wn. App. at 859-60.

B.    Missing Witness Doctrine

In general, the State may not comment on the defendant's lack of evidence because the defendant has no duty to present evidence. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). The missing witness doctrine is an exception: it applies where a party failed to produce a witness particularly within its control. *State v. Blair*, 117 Wn.2d 479, 485-86, 816 P.2d 718 (1991). When applicable, this doctrine permits both a prosecutor to comment on a defendant's failure to produce evidence and a jury to infer that the missing evidence or testimony would have been unfavorable to the party who failed to produce it. *Blair*, 117 Wn.2d at 485-86.

The missing witness doctrine applies in a criminal case when: (1) the absent witness is particularly within the defense's ability to produce, (2) the missing testimony is not merely cumulative, (3) the witness's absence is not otherwise explained, (4) the witness is not incompetent or her testimony privileged, and (5) the testimony does not infringe on the defendant's constitutional rights. *Cheatam*, 150 Wn.2d at 652-53. The doctrine does *not* apply where the missing witness's testimony, if favorable to the party who would naturally have called the witness, would necessarily be self-incriminatory. *Blair*, 117 Wn.2d at 489-90. The State may only comment on the defendant's failure to call a witness where the defendant has unequivocally implied that the missing witness would have corroborated his theory of the case and it is clear the defendant could produce the witness. *State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114 (1990).

C.    The Trial Court Misapplied the Missing Witness Doctrine

Over Conner's objection, the trial court allowed the State to argue that Duckworth would have provided unfavorable testimony and it gave a missing witness instruction to that effect. The trial court misapplied the missing witness doctrine.[3]

Conner never unequivocally implied that Duckworth would have corroborated his theory of the case or his version of the recorded jail phone calls. The record does not demonstrate that Duckworth was peculiarly within the defendant's ability to produce. Despite her romantic relationship with Conner and hostility towards the State, the record contains no evidence that the State could not have called her as a witness. The record also does not demonstrate that Duckworth could provide material testimony. Although she could have testified about what Conner meant when he stated he was "done with all that" and "changing [his] ways" in the jail calls with Duckworth, she could have only testified as to her understanding of Conner's statements. Supp. CP at 355, 360. Duckworth's absence was adequately explained: she did not want to incriminate herself. Therefore, relying on all the *Cheatam* factors, the trial court misapplied the missing witness doctrine and erred by instructing the jury using the missing witness instruction. 150 Wn.2d at 652-53.

_____

[3] The parties both argue that the trial court based its ruling in part on a mistaken belief that Conner's counsel stated in opening that Duckworth would testify. While the trial court did ask Conner's counsel why he said Duckworth was going to testify, implying a mistaken belief that he had done so, the trial court's ruling the next day does not indicate that this was a factor in its decision. The trial court stated:

> [Conner's counsel] argued in his opening statement that the jury would hear *about*
> Rachel Duckworth and would hear about the safe that was found in her apartment.

XVI RP at 2415-16 (emphasis added). From this statement, it is clear that the trial court did not actually base its ruling on a mistaken belief that Conner's counsel argued Duckworth would testify.

D.    The Error is Harmless

Although the trial court erred by allowing the missing witness instruction, the error was harmless. As long as the jury is properly instructed on the State's burden, an improper jury instruction may be harmless error. *Montgomery*, 163 Wn.2d at 600. "'An erroneous instruction is harmless if, from the record in [the] case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' Whether a flawed jury instruction is harmless error depends on the facts of a particular case." *Montgomery*, 163 Wn.2d at 600 (quoting *State v. Carter*, 154 Wn.2d 71, 81, 109 P.3d 823 (2005)).

Here, the trial court properly instructed the jury on the State's burden. The State emphasized its burden during closing arguments. And the State did not make repeated references to Duckworth's absence.

Because other evidence tied Conner to each of the home invasion robberies and burglaries, we hold the instructional error was harmless.[4] It did not contribute to the verdict. Conner's co-defendant, Alexander, testified about Conner's involvement in the Twelfth Street (I) and (II) crimes. Alexander testified Conner wore a bandana and carried a Hi-Point .40 pistol during both incidents. Another co-defendant, Smith, testified that Conner stored stolen property from both incidents with Smith. Though the victims did not identify Conner at trial, one of them corroborated Alexander's testimony.

---

[4] We summarized only a portion of the evidence that inculpates Conner. Additional evidence of Conner's guilt also exists in the record.

15

Alexander also testified as to Conner's involvement in the Shore Drive crime. He related how Conner participated in using force against Cummings. Smith also testified that Conner told him about the incident and how it did not go as planned because the victim was home. Although Cummings did not identify Conner at trial, he corroborated the events.

Smith testified that he participated in the crime at the Weatherstone Apartments at Conner's invitation. Alexander related that they targeted this residence because Conner knew the victim, and that Conner carried the victim's personal property from the apartment.

Alexander also testified about Conner's involvement in the Wedgewood Lane crime. He related that Conner helped plan the crime and that Conner participated by scoping out the apartment earlier in the day. Conner wore a black hoodie and bandana, and carried the Hi-Point .40 pistol. The victims corroborated this testimony. The record contains overwhelming evidence of Conner's guilt, and the erroneous instruction did not contribute to the verdict.

V.    COMMENT ON THE EVIDENCE

Conner argues that the trial court improperly commented on the evidence when it sustained some of the State's objections during closing arguments. We disagree.

A.    Judicial Comments on the Evidence Prohibited

Article 4, section 16 of the Washington Constitution prohibits judges from commenting on the evidence. *State v. Swan*, 114 Wn.2d 613, 657, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995). A court's conduct violates the constitution only if its attitudes are "'reasonably inferable from the nature or manner of the court's statements.'" *State v. Elmore*, 139 Wn.2d 250, 276, 985 P.2d 289 (1999)

16

(quoting *State v. Carothers*, 84 Wn.2d 256, 267, 525 P.2d 731 (1974)). "A court does not comment on the evidence simply by giving its reasons for a ruling." *In re Det. of Pouncy*, 144 Wn. App. 609, 622, 184 P.3d 651 (2008), *aff'd*, 169 Wn.2d 382 (2010).

B.      No Comment on the Evidence

Conner argues that there are two instances where the trial court commented on the evidence when it sustained the State's objections during Conner's closing argument. First, Conner argued to the jury that the police and prosecutor's office directed Conner's co-defendants to lie. The State objected and the trial court sustained the objection. In ruling, the trial court simply stated, "Sustained. Move on, [Conner's counsel]." XVII RP at 2591. Following this ruling, Conner almost immediately made another argument that implied the State manipulated a co-defendant's testimony. In ruling on that objection, the trial court stated, "Members of the jury, you will disregard the last argument of [c]ounsel." XVII RP at 2591. Because the trial court judge did not convey to the jury her personal opinion regarding the truth or falsity of any evidence introduced at trial, it did not impermissibly comment on the evidence. *See Lane*, 125 Wn.2d at 838. The trial court merely ruled on the objections.

Second, the trial court sustained the State's objection to Conner's argument that two of the co-defendants were experienced liars. In ruling on that objection, the trial court stated, "I have sustained the objection, and you are instructed to disregard the last remarks of [c]ounsel." XVIII RP at 2616-17. Again, the trial court did not convey to the jury its personal opinion regarding merits of the case or its evaluation of disputed evidence. We hold that the trial court did not

17

impermissibly comment on the evidence and, therefore, did not violate Conner's constitutional rights.[5]

VI.     Firearm Enhancement on Weatherstone Apartment Incident

Conner argues, and the State concedes, that the trial court erred when it imposed a 60 month firearm enhancement on his burglary in the first degree conviction arising from the Weatherstone Apartment incident. The jury did not find beyond a reasonable doubt that Conner was armed with a firearm during the commission of burglary in the first degree of the Weatherstone Apartment; therefore, we accept the State's concession and remand to the trial court to strike the firearm enhancement and to resentence Conner.

VII.     STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Conner asserts that insufficient evidence exists to support two convictions for unlawful possession of a firearm in the second degree and two convictions for possession of a stolen firearm. He also asserts the prosecutor committed misconduct by relying on coerced and false testimony. We hold that sufficient evidence exists for the unlawful possession of a firearm convictions and the possession of a stolen firearm convictions and that the prosecutor did not commit misconduct.

A.     SUBSTANTIAL EVIDENCE

Conner asserts that his convictions for unlawful possession of a firearm in the second degree (Hi-Point .40 pistol), possession of a stolen firearm (Hi-Point .40 pistol), unlawful possession of a firearm in the second degree (Taurus .44 revolver), and possession of a stolen

_____

[5] To the extent that Conner argues that the trial court's rulings on the State's objections amounted to instructing the jury to disregard Conner's defense theory, this claim is without merit. The trial court instructed the jury only to disregard an improper statement by defense counsel during closing argument, not to disregard the defendant's theory of the case.

firearm (Taurus .44 revolver) are not supported by substantial evidence. Specifically, he argues that sufficient evidence does not support the jury's finding that he possessed the firearms or that he knew they were stolen. Viewed in the light most favorable to the State, the evidence is sufficient to convince the jury beyond a reasonable doubt that Conner possessed the Hi Point .40 pistol and the Taurus .44 revolver, and that Conner knew both firearms were stolen.

### 1. Standard of Review

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

### 2. Possession

Conner first asserts that the State failed to prove beyond a reasonable doubt that he possessed both firearms. Possession can be actual or constructive. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). Actual possession means the firearms were in Conner's personal custody. *Staley*, 123 Wn.2d at 798. Constructive possession means that Conner had dominion and control over the firearms. *Staley*, 123 Wn.2d at 798; *State v. Summers*, 107 Wn. App. 373, 384, 28 P.3d 780 (2001). Dominion and control over the premises where the item was found creates a rebuttable inference of dominion and control over the item itself. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). The State must show more than mere proximity, but need

19

not show exclusive control. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008). However, knowledge of the presence of contraband, without more, is insufficient to show dominion and control to establish constructive possession. *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983). The trial court instructed the jury, without objection, that "[a]ctual possession occurs when the item is in the actual physical custody of the person charged" and that "[c]onstructive possession occurs when . . . there is dominion and control over the item." CP at 258.

### a.      Hi-Point .40 Pistol

To convict Conner of unlawful possession of the Hi-Point .40 pistol, the State needed to prove that he possessed it "on or between September 15, 2010 and November 17, 2010." CP at 262. Viewed in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Conner actually possessed the Hi-Point .40 pistol between September 15 and November 17. Testimony established that Conner carried the Hi-Point .40 pistol on his person during the commission of four of the home invasion robberies and burglaries. Therefore, sufficient evidence exists to uphold this conviction.

### b.      Taurus .44 Revolver

To convict Conner of unlawful possession of the Taurus .44 revolver, the State needed to prove that Conner possessed it "on or between November 1, 2010 and November 17, 2010." CP at 264. Viewed in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that Conner actually possessed the Taurus .44 revolver between November 1 and November 17. The State presented evidence that the Taurus .44 revolver was stolen on November 1. Testimony established that Conner actually possessed and handled the Taurus .44 revolver on numerous occasions, including when Adams initially showed it to him after

it was stolen and when Conner held it while sitting in the front seat of Adams's truck. Therefore, sufficient evidence exists to uphold this conviction.

### 3. Knowledge that the Firearms were Stolen

Conner next asserts that the State failed to prove beyond a reasonable doubt that he knew both firearms were stolen. "Knowledge" means that a person "is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or . . . has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense." RCW 9A.08.010(1)(b).

#### a. Hi-Point .40 Pistol

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Conner knew the Hi-Point .40 pistol was stolen. The firearm's true owner testified that the firearm went missing after Brown and Conner visited his home. Alexander testified that the Hi-Point .40 pistol was "stolen" and that another co-defendant gave it to Conner on September 5 as "payment" for broken property. XII RP at 1683, 1685. The serial number was filed off. Detective Davis testified that in his training and experience, the only reason to file a serial number off any weapon is to conceal its stolen identity. Conner carried this firearm during the majority of the home invasion robberies and burglaries. The State produced sufficient evidence to convince a rational jury beyond a reasonable doubt that Conner had knowledge the firearm was stolen at the time he possessed it.

#### b. Taurus .44 Revolver

Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Conner knew the Taurus .44 revolver was stolen. The firearm's true owner testified that the firearm went missing after his home was burglarized on

November 1. The firearm's true owner also identified the firearm at trial by its appearance and serial number. Alexander testified that Conner was present when Adams discussed acquiring the Taurus .44 semiautomatic by stealing it in "a lick [which is] . . . . [a] burglary or robbery, some type of breaking and entering." XII RP at 1685. The State produced sufficient evidence to convince a rational jury beyond a reasonable doubt that Conner had knowledge the firearm was stolen at the time he possessed it.

### C.    PROSECUTORIAL MISCONDUCT

Conner asserts the prosecutor committed misconduct by relying on Smith's "false and coerced testimony" and Alexander's false testimony.[6] SAG at 11. We disagree and hold that no prosecutorial misconduct occurred.

The due process clause of the Fourteenth Amendment to the United States Constitution imposes on prosecutors a duty not to introduce perjured testimony or use evidence known to be false to convict a defendant. *State v. Finnegan*, 6 Wn. App. 612, 616, 495 P.2d 674 (1972). This duty requires the prosecutor to correct State witnesses who testify falsely. *Finnegan*, 6 Wn. App. at 616 (citing *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959)). To succeed on his claim that the prosecutor used false evidence to convict him, Conner must show that "(1) the testimony (or evidence) was actually false, (2) the prosecutor knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003). Conner fails to make the necessary showing for the first of these elements regarding both Smith's and Alexander's testimony.

---

[6] Additionally, Conner argues that the police coerced Smith into making a statement. Any fact related to Smith's custodial interrogation is outside of this record on appeal. We do not address issues relying on facts outside the record on direct appeal. *McFarland*, 127 Wn.2d at 338 n.5.

The record does not support any of Conner's assertions that the State relied on false testimony. Conner offers no evidence to demonstrate the falsity of Smith's or Alexander's testimony other than his own version of events. Conflicting testimony is not evidence of falsity. *See Camarillo*, 151 Wn.2d at 71 (Credibility determinations are for the trier of fact and are not subject to review.). Because there is no support in the record that the State introduced false testimony, Conner's assertion relating to prosecutorial misconduct is without merit.

VI    PERSONAL RESTRAINT PETITION

In his PRP, Conner argues (a) the State's second amended information is invalid because the State did not file an amended statement of probable cause, (b) the jury instructions relieved the State of its burden to prove all elements of the crimes beyond a reasonable doubt, (c) the State vindictively prosecuted Conner, and (d) the trial court erred by imposing an exceptional sentence without findings, by failing to conduct a same criminal conduct analysis, and by violating his double jeopardy rights. We vacate Conner's theft in the third degree conviction on double jeopardy grounds and remand for resentencing, but hold that the remainder of his claims are without merit. Because we remand for resentencing, we do not reach Conner's same criminal conduct claim.

A.    Standard of Review

We consider the arguments raised in a PRP under one of two different standards, depending on whether the argument is based on constitutional or nonconstitutional grounds. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004). A petitioner raising constitutional error must show that the error caused actual and substantial prejudice. *Davis*, 152 Wn.2d at 672. In contrast, a petitioner raising nonconstitutional error must show a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007). Additionally, Conner must support his claims of error with a statement of the

facts on which his claim of unlawful restraint is based and the evidence available to support his factual allegations. RAP 16.7(a)(2); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988); *see also In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990). Conner must present evidence showing his factual allegations are based on more than mere speculation, conjecture, or inadmissible hearsay. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). Bald assertions and conclusory allegations are not sufficient. *Rice*, 118 Wn.2d at 886.

B.    Probable Cause

Conner argues that the State's second amended information is invalid because the State did not file an amended statement of probable cause. Conner fails to cite any authority for this proposition, and we could find none. Thus, Conner cannot demonstrate a fundamental defect resulting in a complete miscarriage of justice.

C.    Jury Instructions

Conner argues that the "to convict" instructions relieved the State of its burden to prove all elements of the crimes beyond a reasonable doubt because some instructions lacked the specific names of co-conspirators, names of victims, and addresses. We disagree.

We review de novo allegations of constitutional violations or instructional errors. *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013); *State v. Brown*, 132 Wn.2d 529, 605, 940 P.2d 546 (1997). Jury instructions suffice where, when taken as a whole "they correctly state applicable law, are not misleading, and permit counsel to argue their theory of the case." *Brown*, 132 Wn.2d at 618.

Conner first argues that instruction 10, the "to convict" instruction for conspiracy to commit burglary, is defective because it does not name co-conspirators. We disagree. A

conspiracy instruction may not be more far-reaching than the charge in the information. *State v. Brown*, 45 Wn. App. 571, 575-76, 726 P.2d 60 (1986). The naming of co-conspirators is not an element of the crime. *See* RCW 9A.28.040. Therefore, the instruction need not name specific co-conspirators. The instruction included all of the elements.

Conner next argues that several of the instructions for burglary and theft are deficient because they do not name the victims or contain addresses. We disagree. The names of victims and addresses are not essential elements of the crimes charged. Therefore, we hold that these claims are without merit.

### D.     Prosecutorial Vindictiveness

Conner argues that the prosecutor acted vindictively and retaliated against Conner by adding charges in the second amended information. The crux of Conner's argument is that the prosecutor deprived of him of his right to a fair trial because adding additional criminal counts and sentencing enhancements amounted to prosecutorial vindictiveness. We disagree.

We will reverse a conviction due to prosecutorial misconduct only if the defendant establishes that the conduct was both improper and prejudicial. *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011). "Constitutional due process principles prohibit prosecutorial vindictiveness." *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006). "'[A] prosecutorial action is vindictive only if *designed* to penalize a defendant for invoking legally protected rights.'" *Korum*, 157 Wn.2d at 614 (quoting *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). Actual vindictiveness must be shown by the defendant through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights. *Meyer*, 810 F.2d at 1245. A presumption of vindictiveness arises when a defendant can prove that "'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Korum*, 157 Wn.2d at 627

(quoting *Meyer*, 810 F.2d at 1245). The mere filing of additional charges after a defendant refuses a guilty plea cannot, without more, support a finding of vindictiveness. *Korum*, 157 Wn.2d at 629, 631.

Here, the State's filing of the amended information does not support Conner's assertion of vindictiveness. The prosecutor has discretion to determine the number and severity of charges to bring against a defendant. *State v. Rice*, 174 Wn.2d 884, 901, 279 P.3d 849 (2012). Conner has failed to show the State acted vindictively by filing additional charges. Therefore, we hold that the prosecutor did not act vindictively or retaliate against Conner.

E.     Sentencing[7]

1.     Exceptional Sentence

Conner argues that the trial court imposed an exceptional sentence without entering written findings in support of that exceptional sentence. However, the trial court did not impose an exceptional sentence. Conner's sentences were within the standard range, and the trial court ran the underlying offense sentences concurrent with each other. Because the trial court did not impose an exceptional sentence, no findings were required and this claim is without merit.

2.     Double Jeopardy

Conner argues that the trial court violated his right to be free from double jeopardy under the United States Constitution and the Washington Constitution. The State correctly concedes that the robbery and theft from Cummings, during the Shore Drive incident, were the same in law and fact. We accept the State's concession, reverse Conner's conviction of theft in the third degree, and remand for resentencing. We disagree with Conner regarding to all other charges.

---

[7] Conner also argues that the trial court erred by not conducting a same criminal conduct analysis. Because we remand for resentencing, we do not address this issue.

Double jeopardy violations are questions of law we review de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). The federal and state constitutions prohibit being punished twice for the same crime. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Freeman*, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005). Multiple convictions whose sentences are served concurrently may still violate the rule against double jeopardy. *State v. Turner*, 169 Wn.2d 448, 454-55, 238 P.3d 461 (2010). Absent clear legislative intent to the contrary, two convictions constitute double jeopardy when the evidence required to support a conviction for one charge is also sufficient to support a conviction for the other charge, even if the more serious charge has additional elements. *See Freeman*, 153 Wn.2d at 776-77. Thus, two convictions constitute the same offense if they are the same in law and in fact. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). If each conviction includes elements not included in the other, or requires proof of a fact that the other does not, the offenses are different. *Calle*, 125 Wn.2d at 777.

Conner first argues that his burglary convictions should be reversed because they were the same in law and in fact as the thefts and robberies. We disagree. A trial court does not violate double jeopardy protections if it enters convictions for multiple crimes that the legislature expressly intends to punish separately. *State v. Elmore*, 154 Wn. App. 885, 900, 228 P.3d 760 (2010). The legislature enacted the burglary antimerger statute that expressly allows for a defendant to be convicted and punished separately for burglary and all crimes committed during that burglary. RCW 9A.52.050; *Elmore*, 154 Wn. App. at 900. The fact that the State can establish multiple offenses with the same conduct does not alone violate double jeopardy. *State v. Mandanas*, 163 Wn. App. 712, 720 n.3, 262 P.3d 522 (2011). Therefore, the trial court may punish burglary separately from other crimes because of the plain language of RCW 9A.52.050.

Accordingly, the trial court did not violate Conner's right to be free from double jeopardy when it treated the burglaries as separate criminal conduct for sentencing purposes.

Conner next argues that we should vacate his separate convictions of three counts of theft in the second degree and one count of theft in the third degree because they were the same in law and in fact as his convictions of eight counts of robbery in the first degree. We vacate only Conner's conviction of theft in the third degree because this theft was the functional equivalent of a lesser included of robbery in the first degree of Cummings.

A person is guilty of robbery in the first degree if

> [i]n the commission of a robbery or of immediate flight therefrom, he . . . [i]s armed with a deadly weapon; or [d]isplays what appears to be a firearm or other deadly weapon; or [i]nflicts bodily injury.

RCW 9A.56.200. RCW 9A.56.190 defines "robbery," in pertinent part, as follows:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

A person is guilty of theft in the second degree if he commits theft of property which exceeds $750 in value but does not exceed $5,000 in value, or an access device. RCW 9A.56.040(1)(a) and (d). A person is guilty of theft in the third degree if he commits theft of property that does not exceed $750 in value. RCW 9A.56.050. RCW 9A.56.020(1)(a) defines "theft," in pertinent part, as follows:

> To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services.

A person is guilty of theft of a firearm if he commits a theft of any firearm, regardless of the value of the firearm. RCW 9A.56.300.

28

Conner's convictions arising from the Twelfth Street (I) incident were robbery in the first degree and theft in the second degree. Conner's convictions do not constitute double jeopardy. Although both crimes require the taking of another person's property, the victims in this incident were different. Robert Dato and Aaron Dato were both victims of the robberies. Harveson, who was not present during the home invasion, was not a robbery victim. However, because Conner took Harveson's property, he was a theft victim. The crimes were different in fact because proof of one offense would not necessarily prove the other. *State v. Lust*, 174 Wn. App. 887, 891, 300 P.3d 846 (2013); *State v. Smith*, 124 Wn. App. 417, 432, 102 P.3d 158 (2004) *aff'd*, 159 W.2d 778 (2007) (for purposes of double jeopardy analysis, the same criminal conduct cannot occur where there are multiple victims). We hold that these convictions do not constitute double jeopardy.

Conner's convictions from the Twelfth Street (II) incident, robbery in the first degree and theft in the second degree do not constitute double jeopardy because, again, the victims were different. Robert Dato, Aaron Dato, and Turner, were robbery victims. Harveson, a victim of theft but not robbery, was not present during the home invasion. The crimes were different in fact because proof of one offense would not necessarily prove the other. We hold that these convictions do not constitute double jeopardy.

The State concedes that Conner's convictions from the Shore Drive incident, robbery in the first degree and theft in the third degree, constituted a violation of double jeopardy. Even though the statutory elements differ, under the facts of this incident, both crimes involved the taking of property from the same victim at the same time. We accept the State's concession and reverse the theft in the third degree conviction.

Conner's convictions from the Wedgewood Lane incident, robbery in the first degree, theft of a firearm, and theft in the second degree by taking a debit card, do not constitute a violation of

double jeopardy. Different people were victims. Aaron Tucheck and Keefe Jackson were robbery victims. Conner took Ann Tucheck's property, the firearm and debit card, but not in her presence, and not with force or the threatened use of force. Therefore, she was a theft victim and not a robbery victim. Additionally, theft of a firearm and theft of a debit card are neither factually nor legally identical because proof of one offense would not necessarily prove the other. We hold that these convictions do not constitute double jeopardy.

We vacate Conner's theft in the third degree conviction and affirm his remaining convictions. We remand for resentencing on the remaining convictions and twelve firearm enhancements.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Bjorgen, A.C.J.